IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 10, 2013

## JOE N. HILL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for McNairy County**
**No. 2772      J. Weber McGraw, Judge**

**No. W2012-02224-CCA-R3-PC - Filed September 30, 2013**

The petitioner, Joe N. Hill, appeals the denial of post-conviction relief from his McNairy County Circuit Court guilty-pleaded conviction of incest, for which he received a sentence of three years' probation. In this appeal, the petitioner contends that he was denied the effective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Ryan B. Feeney, Selmer, Tennessee, for the appellant, Joe N. Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Mike Dunavant, District Attorney General; and Bob Gray, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 16, 2011, the petitioner, originally charged with rape and incest, entered a plea of guilty to incest in exchange for an agreed sentence of three years' probation and dismissal of the rape charge. The transcript of the guilty plea colloquy contains the following factual summary of the offense:

> If this case were to go to trial, the State would be able to show that on or about October 27th of 2010, Deputy Allen Strickland, McNairy County Sheriff's Department, received a

report from [the victim] that she was the victim of a forcible sexual encounter with the defendant, Joe Hill. The usual protocol was followed regarding doctor visits and also evidence gathered that the alleged [victim] . . . was, in fact, the niece of the defendant, Joe Hill, his brother's daughter. Subsequent investigation by both the sheriff's department and our office have raised serious doubt as to whether or not this was a forcible sexual encounter. There is, however, Mr. Hill's statement to the officer that there was sexual contact between the two, at least in the form of fellatio.

On December 30, 2011, the petitioner filed a pro se petition for post-conviction relief, and the petitioner's counsel filed an amended petition on June 11, 2012. In his amended petition, the petitioner claimed that he was deprived of the effective assistance of counsel and that his guilty plea was not knowingly, voluntarily, and intelligently made. In support of his claims, the petitioner alleged that neither his counsel nor the trial court informed him of the lifetime supervision requirement attendant to his conviction of incest.

At the evidentiary hearing, the prosecutor explained that the judgment incorrectly indicated that the petitioner was subject to community supervision for life when his conviction offense did not actually carry the lifetime supervision requirement. The prosecutor noted that the defendant was not told that he would be subject to community supervision for life but was told that he would be required to merely register as a sex offender for the duration of his life, which was a correct statement of the law. The prosecutor asked the post-conviction court to enter a corrected judgment form removing the offending information. Post-conviction counsel agreed with the prosecutor's assessment and agreed that the court could enter a corrected judgment if it found that the error was "only an error of administration." Counsel nevertheless argued that the misinformation regarding the lifetime supervision requirement rendered the petitioner's guilty plea involuntary. The post-conviction court deemed the judgment error "ministerial" and entered a corrected judgment form.

Trial counsel testified that he was retained to represent the petitioner shortly after the petitioner's arrest. Counsel said that he waived the petitioner's right to a preliminary hearing because the petitioner did not want his wife to hear the audio-recorded statement he provided to police where he admitted sexual contact with the victim. After the petitioner's indictment, trial counsel filed "all the generic motions," including a motion "to suppress any and all statements." Counsel said that because he determined that no legal basis existed to pursue suppression of the petitioner's statement, he did not ask that the motion be heard. Counsel said that the petitioner acknowledged having sexual contact with the victim

and that he told trial counsel "[t]hat he had paid her some money and maybe she had stolen some checks from him."

Counsel testified that after negotiating the plea agreement with the State, he explained to the petitioner that the petitioner would have to register as a sex offender and "that it was for life but in certain situations he may apply back after so many years to get off of it." Counsel said that the petitioner did not appear to be under the influence of an intoxicant when he entered the plea and that the petitioner indicated that "he was satisfied with his representation." Counsel said that it was his "understanding [that] the victim did testify before the [g]rand [j]ury," but he could not recall whether he told the petitioner that she had done so.

The petitioner testified trial counsel told him that "they could do something about" his "more or less admission" based upon his treatment at the hands of police. The defendant said that when officers arrived at his residence to investigate the victim's claims, one officer placed handcuffs on him that were too tight and another forced him to turn off his cellular telephone. He stated that once the sheriff arrived, he agreed to go to the police station voluntarily because he believed the officers "were investigating" the victim rather than a complaint that he had raped her. The petitioner acknowledged that he admitted having sexual contact with the victim, explaining that he did so "[b]ecause of what . . . he was talking about and she was talking about wearing a wire."

The petitioner testified that he had been under the care of a psychiatrist "for probably 15 years" and that he took nine medications to treat his unspecified mental illness. The petitioner said that trial counsel actually suggested waiving the preliminary hearing to avoid having his wife hear the recorded admission of sexual contact with the victim. The petitioner said that he only agreed to plead guilty because he could not afford to hire another lawyer and trial counsel had failed to perform any work on the case. The petitioner said that he could not recall trial counsel's explaining the sexual offender registry but that he "heard that in court" when he entered his plea. The petitioner acknowledged that the trial court provided him with all relevant information before he entered his plea "but at that point it didn't really matter" because he had already decided to plead guilty.

During cross-examination, the petitioner agreed that he knew that he was entering a plea to one count of incest. Although he said that "[n]obody is real sure" that the victim was his niece, he admitted that he had always treated her as his niece. The petitioner insisted that counsel had not examined the victim's birth certificate despite counsel's testifying on direct examination that he had examined the document and determined that the petitioner's brother was the victim's father. The petitioner admitted that he told the trial court that he was satisfied with trial counsel's handling of the case but said that he lied.

-3-

Trial counsel testified on rebuttal that he did inform the petitioner about the sexual offender registry requirements. Counsel said that he met with the petitioner at least 10 times, often when petitioner came to his office without an appointment. Counsel reiterated that he saw no meritorious reason to seek suppression of the petitioner's statement.

At the conclusion of the hearing, the post-conviction court observed that the transcript of the plea colloquy established that the petitioner "was advised by the [c]ourt that he would be on the sex offender registry for life" and that the petitioner "indicated that he understood . . . he would be on that registry and also indicated that his counsel had advised him of that." In a written order denying post-conviction relief, the post-conviction court accredited trial counsel's testimony and concluded that counsel "provided adequate assistance." The post-conviction court also found that the petitioner failed to show that counsel performed deficiently or "that he was prejudiced by the administrative error of marking the incorrect box on the Judgment Sheet which was prepared after the plea and sentence was announced." The court concluded that the petitioner "actually understood the significance and consequences of the plea and sentence" and "that the petitioner was not coerced into entering a plea."

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel and involuntary guilty plea, claiming that trial counsel performed deficiently by failing to seek a hearing on the motion to suppress and by failing to accurately inform him of the consequences of his guilty plea and that counsel's failures as well as misinformation provided by the trial court rendered his guilty plea unknowing and involuntary. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930,

936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn.2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. The post-conviction court accredited counsel's testimony that no meritorious grounds existed for suppression of the petitioner's pretrial statement, and the petitioner failed to present any grounds for suppression at the evidentiary hearing. To the contrary, the petitioner

acknowledged that he traveled to the police station voluntarily and that he voluntarily admitted having sexual contact with the victim. That the petitioner felt that the handcuffs initially used were too tight or that the officers' behavior was rude would not render the statement inadmissible.

Trial counsel's accredited testimony and the transcript of the plea colloquy both establish that counsel and the trial court accurately advised the petitioner that he would be required to register as a sex offender for life. At no time did anyone indicate that the petitioner would be subject to the lifetime supervision requirement. The record supports the prosecutor's explanation that the inclusion of the lifetime supervision provision in the judgment form was a clerical error committed by the prosecutor himself. Under those circumstances, the post-conviction court did not err by ordering entry of a corrected judgment form removing the offending provision. The petitioner failed to establish that, but for the inclusion of the lifetime supervision provision in the judgment form, he would not have pleaded guilty and would have insisted on a trial. Said another way, the record does not support a finding that the petitioner's plea was involuntary because the sentence imposed was actually less onerous than the judgment form originally led him to believe.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-